IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| KENDRICK R. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 117-127 |
| | ) | |
| SCOTT WILKES, Head Warden; ANTONIO | ) | |
| ROSS, Sergeant over CERT; and SERENA | ) | |
| CHANCE, Lieutenant, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Valdosta State Prison in Valdosta, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case pursuant to 42 U.S.C. § 1983 regarding events alleged to have occurred at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**, (doc. no. 68), resulting only in summary judgment for Defendants Wilkes and Chance on Plaintiff's Eighth Amendment excessive force claims against them. The case should proceed to trial on Plaintiff's Eighth Amendment excessive force claim against Sergeant Ross arising out of a taser application on March 27, 2017.

**I.    PROCEDURAL BACKGROUND**

Plaintiff originally filed this case in the Northern District of Georgia, and on September 19, 2017, Magistrate Judge Walter E. Johnson transferred it to this Court. (Doc. nos. 1, 5.) In his amended complaint, Plaintiff names as Defendants (1) Scott Wilkes, Head

Warden; (2) Antonio Ross, Sergeant over CERT; and (3) Serena Chance, Lieutenant. (Doc. no. 6, pp. 1, 5.) On March 6, 2018, the Court dismissed Plaintiff's official capacity claims against Defendants, and allowed Plaintiff's Eighth Amendment claims for excessive force against Defendants in their individual capacities based on Sergeant Ross's application of his taser drive stun to Plaintiff on March 27, 2017. (Doc. no. 36.)

Defendants submitted with their motion for summary judgment a Statement of Material Facts ("SMF") pursuant to Loc. R. 56.1. (Doc. no. 68-1.) Although Plaintiff's response consisted of only three pages of factual argument without any opposing affidavits, (doc. no. 74), Plaintiff attached the following six exhibits: (1) part of Defendants' brief in support of their motion for summary judgment; (2) Lt. Chance's affidavit; (3) medical and witness reports concerning the day in question, which were also originally filed by Defendants in support of their motion; (4) one page each from Plaintiff's amended complaint and Defendants' answer; and (5) one page from Plaintiff's interrogatory to Sergeant Ross. (Doc. nos. 74-1 – 74-6.)

The Court deems admitted all portions of Defendants' Statement of Material Facts that have evidentiary support in the record and are not properly opposed by Plaintiff as contemplated under Federal Rule of Civil Procedure 56.[1] See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v.

---

[1]Federal Rule of Civil Procedure 56 requires a party disputing a fact to cite "to particular parts of materials in the record," and an affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1) & (4).

Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (deeming admitted all unopposed fact statements supported by the evidentiary materials of record).

However, Defendants continue to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Thus, the Court will review the record, including Plaintiff's sworn deposition, "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

## II. FACTS

### A. Undisputed Facts

On March 27, 2017, Plaintiff was housed in administrative segregation dormitory 11-B at ASMP for disciplinary sanctions. (Pl.'s Dep., doc. no. 70-1, p. 32.) During distribution of meal trays to inmates in their individual cells, Plaintiff informed a floor officer his cell was skipped, he had not received his meal tray, and his tray was still on the meal cart. (Id. at 18.) At this time, Plaintiff's cell door clicked open and became unsecured, and Plaintiff exited his cell unrestrained. (Id. at 18-19.) While housed in dormitory 11-B, an inmate must be cuffed from behind before being removed from his cell and must have at least two officers present at the time of being moved. (Id. at 43-44.)

Plaintiff exited his cell unrestrained with a sharp object, stopping just short of the orderly distributing meals and the meal cart. (Pl.'s Dep, pp. 19-20; Officer Witness Statements, doc. no. 68-9, p. 14; Incident Report, doc. no. 68-10, p. 1; doc. no. 68-11.) The orderly flipped the cart to separate Plaintiff from him. (Pl.'s Dep., p. 20.) Plaintiff and the orderly argued. (Id.) The orderly picked up one of the meal trays. (Id. at 22.) In response,

3

Plaintiff went up the steps from the lower range of the dormitory to the TV room, got a broom, and returned down the steps towards the orderly. (Id.) The orderly threw the tray at Plaintiff, and they both ran around the dormitory until meeting near the front door, which had been locked by the prison booth operator. (Id. at 22-24.) The prison booth operator called "10-78" to indicate "officer needs assistance" and relayed Plaintiff's attack over the radio. (Id.)

### B. Plaintiff's Version of Events After Operator Call for Assistance

Lt. Chance, shift supervisor, and Sergeant Ross, of the Central Emergency Response Team at ASMP, were two of the officers who responded to the "officer needs assistance" transmittal. (Id. at 14-15; Ross Aff., doc. no. 68-8, ¶¶ 5-6). Once other officers removed the orderly, Lt. Chance grabbed Plaintiff's left wrist and handcuffed it. (Pl.'s Dep., p. 27.) Another officer grabbed Plaintiff's right wrist, which allowed Lt. Chance to handcuff Plaintiff behind his back. (Id. at 25, 28-29) Sergeant Ross came close to Plaintiff, and Lt. Chance backed off. (Id. at 16.) Sergeant Ross instructed the other officers to lie Plaintiff face down on the ground, and while Plaintiff concedes he heard this instruction he points out Sergeant Ross never directly instructed him to lie on the ground. (Id. at 59.) Once the officials controlling Plaintiff placed him on the ground, Sergeant Ross removed his taser and applied it to Plaintiff. (Id. at 17.) At the time, Plaintiff's hands were handcuffed behind his back, he was not resisting, and he made no movements. (Id. at 15-17, 25.) Sergeant Ross applied the taser for about fifteen seconds. (Id. at 35.)

After Sergeant Ross and the officials secured Plaintiff, they transported him to medical for examination. (Id. at 30.) Plaintiff first saw Warden Wilkes next to the sally port as Plaintiff was escorted out of dormitory 11-B. (Id. at 34-35.) Plaintiff does not know

4

when Warden Wilkes arrived at the sally port. (Id. at 33-34.) Plaintiff was treated at medical. (Id. at 30.) On his way back to the dormitory after his medical examination, Plaintiff met with Warden Wilkes briefly and asked him if he was "gonna let [the officers] tase me in handcuffs like you never seen that?" (Wilkes Aff. Ex. Video 1, 19:10-23:10.) Warden Wilkes did not respond and kept walking. (Pl.'s Dep., p. 30.)

### C. Defendants' Version of Events After Operator Call for Assistance

Sergeant Ross responded to the "officer needs assistance" transmittal by showing up at dormitory 11-B. (Id. at 16; Ross Aff., doc. no. 68-8, ¶¶ 5-6.) After the orderly was removed, Plaintiff resisted efforts to apply handcuff restraints, moved around and flailed his arms, pulled away from officers, and refused to comply with officer instructions to lie on the floor and submit to handcuffing. (Ross Aff., ¶¶ 7-9.) Plaintiff refused to comply with Sergeant Ross's instructions to cooperate and cease efforts to resist. (Id.)

Sergeant Ross decided use of a taser in drive stun mode was the most effective and safest means of gaining control of Plaintiff to apply handcuffs. (Id. ¶ 10.) When a taser is in drive stun mode, the user physically applies the taser to a person's body, sending electricity through the end of the taser. (See id. ¶¶ 10, 11, 20-21.) This method is different from shooting the taser and sending electricity through cables hooked on to the victim. (See id. ¶ 21.) Sergeant Ross applied the taser once while controllably taking Plaintiff to the ground and applying handcuffs to Plaintiff. (Id. ¶¶ 14, 17.) Sergeant Ross, along with other correctional officers, then escorted Plaintiff out of the dormitory to medical to be evaluated for injuries. (Id. ¶ 14.) Lt. Chance, the shift supervisor, arrived shortly after Sergeant Ross applied the taser and began operating a camcorder and narrating a video of Plaintiff's

5

removal from the dormitory to medical for examination. (Chance Aff., doc. no. 68-13, ¶¶ 7-9.) Lt. Chance and Plaintiff have known each other since 2009 and have never had any problems. (Pl.'s Dep., p. 55.) Warden Wilkes did not personally participate in application of the taser to Plaintiff or the decision to do so. (Wilkes Aff., doc. no. 68-3, ¶ 6). Warden Wilkes was not present when the taser was used. (Id.; Pl.'s Dep., p. 33.)

Plaintiff's medical examination showed he had two abrasions from his physical altercation with the orderly and from the taser. (Doc. no. 68-10, pp 5-7; Wilkes Aff. Ex. Video 1, 24:30-25:40.) Plaintiff was assessed as medically normal and released with no need for any additional treatment or care. (Doc. no. 68-10, pp. 5-7; Wilkes Aff., ¶ 16.) After his medical examination, Plaintiff saw Warden Wilkes outside walking from the administrative area of the prison as Plaintiff was being escorted to his dormitory cell. (Wilkes Aff., ¶ 7; Wilkes Aff. Ex. Video 1, 19:10-23:10.)

### D. Taser Camera Footage

Sergeant Ross's taser displays the point of view of the taser during the incident. (See Wilkes Aff. Ex. Video 3, doc. no 70, 00:00-00:30.) The recording begins three seconds before application of the taser. (Id.) Plaintiff appears to be in handcuffs when Sergeant Ross, together with at least one other officer and surrounded by at least three other officers, forcibly places Plaintiff on the ground. (Id.) In one constant series of movements, Sergeant Ross and others place Plaintiff on the ground, Sergeant Ross pins Plaintiff's legs, and Sergeant Ross applies the taser for no more than eight seconds. (Id.) Sergeant Ross backs off Plaintiff while other officers continue to hold Plaintiff down. (Id.) These events transpire very quickly, such that the viewer must replay the footage at half speed or less on multiple occasions to fully appreciate the sequence of events.

6

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by

affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Defendants Are Entitled to Summary Judgment

Defendants contend they are entitled to summary judgment because Warden Wilkes and Lt. Chance cannot be liable under a respondeat superior theory, Sergeant Ross did not violate Plaintiff's Eighth Amendment rights against excessive force, and all Defendants are entitled to qualified immunity. (Doc. no. 68-2.) Plaintiff opposes the motion, contending Sergeant Ross violated his constitutional rights by applying the taser drive stun while he was on the ground and not being combative. (Doc. no. 74.)

#### 1. Overview of Excessive Force Legal Landscape

"The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). To prevail on an excessive force claim, Plaintiff must satisfy both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation harmful enough to establish a constitutional violation. Id. *De minimi*s uses of physical force are beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of

8

action," even if it "may later seem unnecessary in the peace of a judge's chambers . . . ." Id. at 9 (citation omitted). However, because injury and force are imperfectly correlated and it is the force used that counts, an inmate "who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Subjectively, Plaintiff must show that the actions taken involved the unnecessary and wanton infliction of pain. See Whitley v. Albers, 475 U.S. 312, 319 (1986). That is,

> [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."

Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319). Rather, the Court must consider "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7).

The subjective component analysis narrows the precise inquiry applicable at the summary judgment stage as follows:

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support *a reliable inference of wantonness in the infliction of pain* under the standard we have described, the case should not go to the jury.

Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 322).

Because the subjective component is contextual, courts consider the following factors: (1) extent of injury, (2) need for application of force, (3) relationship between need and amount of force used, (4) threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375. Any action taken should be viewed in light of the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security. Hudson, 503 U.S. at 6; Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (*per curiam*). For example, use of an appropriate degree of force to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time").

### 2. Plaintiff Cannot Hold Warden Wilkes and Lt. Chance Liable Based on a Theory of Supervisory Liability

Defendants argue Warden Wilkes and Lt. Chance were not involved in application of the taser or the decision to do so, and therefore, neither Defendant can be held liable based on a theory of *respondeat superior*. (Doc. no. 68-2, p. 10.) "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) ("Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution."). Likewise, supervisors, employers, and private contractors cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp. 2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining employer providing medical care for state inmates cannot be sued under § 1983 on *respondeat superior* theory). Therefore, to hold Warden Wilkes and Lt. Chance liable, the evidence must show that either (1) Defendants actually participated in the alleged constitutional violation, or (2) there is a causal connection between either Defendants' actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

No evidence shows either Warden Wilkes or Lt. Chance actually participated in application of the taser drive stun allegedly constituting excessive force. Plaintiff admits Warden Wilkes did not apply or authorize use of the taser. (Pl.'s Dep., pp. 33-36.) He also did not see Warden Wilkes until after Sergeant Ross used the taser and was escorting Plaintiff out of dormitory 11-B for medical examination. (Id.; see also Wilkes Aff., ¶¶ 6-7.) Additionally, Plaintiff states Lt. Chance did not apply the taser. (Pl.'s Dep., pp. 28-29, 36-38; see also Chance Aff., ¶¶ 3-7.) Looking at the facts in the light most favorable to Plaintiff, Lt. Chance did nothing more than place handcuffs on Plaintiff's left wrist. (Pl.'s Dep., pp. 26-27.) Plaintiff admits Sergeant Ross was the only one whose actions he thinks violated his constitutional rights. (Id. at 37.) No evidence establishes Warden Wilkes or Lt. Chance were the individuals responsible for applying the taser or authorizing use of the taser.

(Wilkes Aff., ¶¶ 6-15; Chance Aff., ¶¶ 3-10.)  Therefore, Warden Wilkes or Lt. Chance did not participate in the alleged constitutional violation.

Plaintiff also has not shown the requisite causal connection between Warden Wilkes or Lt. Chance and the asserted constitutional violation.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).  The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)).  The standard for demonstrating "widespread abuse" is high.  In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences."  Brown, 906 F.2d at 671 (emphasis added).  A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff has failed to present any evidence of widespread abuse or shown Warden Wilkes or Lt. Chance instructed Sergeant Ross to apply the taser, or they knew Sergeant Ross would apply the taser and failed to stop him from doing so.  Plaintiff merely states Lt. Chance initially put handcuffs on his left wrist then backed away as Sergeant Ross approached.  (Pl.'s Dep., p. 15.)  However, no evidence establishes Lt. Chance saw Sergeant

Ross apply the taser or knew he would apply the taser. Rather, Plaintiff admits he does not blame Lt. Chance for being stunned, and Lt. Chance disputes being present when Sergeant Ross applied the taser. (Id. at 37-38; see also Chance Aff., ¶3-7.) Likewise, Plaintiff does not blame Warden Wilkes for Sergeant Ross using the taser, and he admits Warden Wilkes did not authorize its use. (Pl.'s Dep., p. 36.) Plaintiff does not know if Warden Wilkes was even present when Sergeant Ross used the taser. (Id. at 33-34.) Warden Wilkes states he was not present and did not authorize use of the taser. (Wilkes Aff., ¶¶ 6-7). Thus, there is no causal connection between Warden Wilkes and Lt. Chance and any constitutional violation.

### 3. Reasonable Jurors Could Find Sergeant Ross Applied More Than Minimal Force and Acted Maliciously and Sadistically to Cause Harm to Plaintiff

In both his complaint and deposition, Plaintiff maintains that, at the moment Sergeant Ross removed his taser from his hip and tasered him, Plaintiff was in handcuffs with his hands behind his back, was not resisting officers, and was lying face down on the ground with no struggle occurring of any sort. (Pl.'s Dep., pp. 15-17, 25, 28-29, 58.) Plaintiff testified as follows at his deposition:

> I was immediately placed in handcuffs, and the other offender was placed against the wall, and they escorted him out of the dormitory. . . . At that time, I was being held by two . . . tall black officials. And Sergeant Ross came in. He instructed them to lay me face down on the floor. And once I was laid down on the floor, that's when he removed the taser from his hip and began drive-stunning me.

(Id. at 16.) Sergeant Ross avers Plaintiff was resisting officers and not handcuffed when he approached, and the forcible takedown of Plaintiff, as well as application of the taser, was

necessary to subdue Plaintiff so he could be handcuffed. (Ross Aff., ¶¶ 7-9; see also doc. no. 68-9.)

The objective video evidence differs materially from both versions of events. Plaintiff appears to be handcuffed when Sergeant Ross first approaches Plaintiff, contrary to Sergeant Ross's affidavit testimony. (Wilkes Aff. Ex. Video 3, 00:00-00:30.) Furthermore, the video shows Sergeant Ross unholstered his taser while approaching Plaintiff, assisted in the takedown of Plaintiff, and immediately applied the taser upon reaching the ground with Plaintiff for eight seconds, contrary to Plaintiff's deposition testimony. (Id.) Left unresolved by the footage is whether Plaintiff was actively resisting officers when Sergeant Ross arrived on the scene, such that force was necessary. This fact is critical because, if Plaintiff's version of events is correct, Sergeant Ross needlessly forced a compliant and handcuffed Plaintiff to the ground and applied a taser to him. On the other hand, if Sergeant Ross's version of events is correct, he was arguably justified in using force, even if Plaintiff was handcuffed, because Plaintiff continued to resist officers.

Of the five factors in the subjective analysis, the only factor favorable to Sergeant Ross under Plaintiff's version of events is the first one because it is undisputed Plaintiff's injuries were not severe, as discussed in § II.B.4, infra. The remaining prongs favor Plaintiff because (1) there would be no need to apply force to Plaintiff; (2) any use of force would outweigh the absence of any need; (3) Sergeant Ross could not have reasonably perceived Plaintiff to be a threat; and (4) Sergeant Ross would not have reasonably tempered the severity of his response. The gratuitous use of force upon a peaceful, cooperative, and handcuffed inmate constitutes a violation of the Eighth Amendment, and a jury must decide whether this version of events, as alleged by Plaintiff, is credible. See Williams v. Burton,

14

943 F.2d 1572, 1576 (11th Cir. 1991) ("The basic legal principle is that once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth and Fourteenth Amendments, and any abuse directed at the prisoner after he terminates his resistance to authority is an Eighth Amendment violation"); Skelly v. Okaloosa Cty. Bd. Of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (holding use of taser gratuitously while pre-trial detainee was handcuffed and compliant was malicious and sadistic).

### 4. Qualified Immunity Does Not Apply to Sergeant Ross, and Because No Reasonable Juror Could Find Plaintiff Suffered more than De Minimis Injuries, He is Limited to Recovery of Nominal Damages

Defendants argue Sergeant Ross is entitled to qualified immunity. (Doc. no. 68-2, pp. 11-14.) However, a qualified immunity defense is not available on the excessive force claims. Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002). Use of excessive force is clearly established to be a violation of the Constitution. Hudson, 503 U.S. at 7; Whitley, 475 U.S. at 319. Because there is "simply no room for a qualified immunity defense when the plaintiff alleges such a violation," the sole question is "whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment." Skrtich, 280 F.3d at 1301-02.

Defendants also argue Plaintiff is barred from claiming compensatory damages and punitive damages under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), ("PLRA"), because his injuries are *de minimis*. (Doc. no. 68-2, pp. 14-16.) Section § 1997e(e) provides, in pertinent part, as follows: "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in

15

custody without a prior showing of physical injury or the commission of a sexual act." Thus, the PLRA prohibits federal civil actions by prisoners alleging purely mental or emotional injury and no physical injury. Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002). To survive application of the § 1997e(e) bar, the physical injury must be more than *de minimis*. Id.

Plaintiff's injuries are clearly *de minimis*, and no reasonable juror could find otherwise. The medical records related to this incident only mention Plaintiff suffering small abrasions of at most one inch, which Plaintiff never alleges to have been caused by Sergeant Ross's application of the taser. (Doc. no. 68-5, pp. 5-7; doc. no. 68-6; doc. no. 68-10, pp. 5-7; doc. no. 68-12.) Nothing in his medical records indicate any follow up treatment was warranted. (Doc. nos. 68-6, p. 1; 68-12, p. 1.); see Ledlow v. Givens, 500 F. App'x 910, 913-14 (11th Cir 2012) (finding only *de minimis* injury where prisoner suffered bloody nose and small laceration resulting in no lasting injury). Plaintiff merely alleges he suffered two scars from the taser, described by him as "little black marks." (Pl.'s Dep., p. 51.) These little black marks do not constitute a serious injury, any more so than the small abrasions referenced in the medical records. See Buckley v. Haddock, 292 F. App'x 791, 795 (11th Cir. 2008) (describing use of taser as not severe where only injuries were sixteen small burns and scarring with no broken bones or other physical injuries). Plaintiff never alleged, and does not now provide evidence of, any lingering issues or pain from use of the taser. (Doc. no. 1; Pl.'s Dep., p. 52.)

As to nominal damages, a failure to expressly request them is not necessarily fatal to awarding such damages, even if a prisoner plaintiff is unable to establish actual injury for compensatory damages. Jackson v. Hill, 569 F. App'x 697, 699 (11th Cir. 2014) (remanding

to trial court for consideration of whether prisoner plaintiff could recover nominal damages, citing Fed. R. Civ. P. 54(d), despite failure to request that relief). Therefore, Plaintiff may still be able to obtain nominal damages at trial.

### 5. Plaintiff's Witness Statement is Inadequate to be Considered and, Even if Considered, Does Not Change the Outcome

On November 1, 2018, Plaintiff filed a statement wherein he restates the events occurring before, during, and after application of the taser. (Doc. no. 77.) The statement falls short of the requirements for an unsworn written affidavit or declaration under 28 U.S.C. § 1746 to create a genuine issue of material fact. "Unsworn statements do not meet the requirements of Rule 56." Dudley v. City of Monroeville, 446 F. App'x 204, 207 (11th Cir. 2011) (citing Carr v. Tatangelo, 338 F.3d 1259, 1273 n.27 (11th Cir. 2003)). Section 1746 allows an unsworn written statement so long as it contains "a handwritten averment, signed and dated, that the statement is true under the penalties of perjury." McCaskill v. Ray, 279 F. App'x 913, 914-15 (11th Cir. 2008) (citing 28 U.S.C. § 1746). First, Plaintiff's statement is neither sworn nor notarized. (Doc. no. 77, p. 2.) Second, Plaintiff's unsworn statement does not include any averment substantially similar to the one under § 1746 and was not made under penalty of perjury. Therefore, Plaintiff's statement cannot be considered as opposition to Defendants' motion for summary judgment. McCaskill, 279 F. App'x at 915 (refusing to consider unsworn declaration not including averment it was made under penalty of perjury on summary judgment).

Just as importantly, summary judgment would still be appropriate even if the Court were to consider the statement. It merely repeats the version of events espoused by Plaintiff

17

the Court has discussed at length *supra*. The statement alleges for the first time the taser damaged Plaintiff's nerves, and medical personnel fabricated the medical report. (Id. at 1.) However, Plaintiff's deposition testimony directly refutes this account because he says there is no lingering pain or injury and he only suffered "little black marks." (Pl.'s Dep., pp. 50-52.) Plaintiff's new statement also contradicts the objective medical record, and there is no evidentiary support for Plaintiff's generalized claim of tampering with the medical records. Thus, the Court is free to disregard this statement. See Hadley v. Gutierrez, 526 F.3d 1324, 1329-30 (11th Cir. 2008) (holding court may disregard sworn statement of party where contradicts prior deposition testimony).

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**, (doc. no. 68), resulting only in summary judgment for Defendants Wilkes and Chance on Plaintiff's Eighth Amendment excessive force claims against them. The case should proceed to trial on Plaintiff's Eighth Amendment excessive force claim against Sergeant Ross arising out of the taser application on March 27, 2017.

SO REPORTED and RECOMMENDED this 24th day of July, 2019, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA